THE CHANCELLOR.
[1] The first ground of demurrer is that the bill presents a misjoinder of causes of action. I do not think so. All the items of the complainant's demands arise out of the agreement. It is the common source from which they all flow.
[2] 2. It is next objected that the case made by the bill is not such as entitles the complainant to relief in a court of equity. If so, the complainant is without relief anywhere. I say this because the complainant sought a remedy on this very agreement for this very cause of action, in the Superior Court of this State, which is of course the appropriate legal tribunal to which the complainant should resort if he has any remedy at law. That court sustained a demurrer to the complainant's, there the plaintiff's, declaration. See Garber v. Whittaker, 36 Del. 272, 6 W.W.Harr. 272, 174 A. 34. The action in that case was in tort. Judge Harrington held that the action would not lie in tort. But he did not base his opinion solely on the proposition that the form of action was the wrong one. His opinion shows also that he considered that the plaintiff's only remedy was in equity. He spoke of Garber as having interests in the property or the proceeds to be derived from its sale which were "equitable in nature." Later in his opinion he referred to the proposition that as between tenants in common the remedy which one has against the other for rents collected lies in most cases not at law but in equity by a bill for an accounting; and he then proceeded as follows [page 37] : "and this principle would seem to be particularly applicable to a case of this character where the interest of the plaintiff, whatever it may be, is not legal, but is purely equitable in its nature."
Thus the Superior Court in speaking of the very grievance which the bill sets up has determined that the complainant can have no remedy at law. Certainly if his bill be true he has a remedy somewhere. If it is not at law, as we must take as settled that it is not, it must be in this court.
3. But the demurrants urge the complainant is guilty of laches. The agreement was made in April, 1930, and the house was completed in October, 1932. The bill was filed on December 10, 1937. Thus the bill was filed six years and eight months after the agreement was made and four years and two months after the house was completed.
[3, 4] The demurrants say that the delay of the complainant in filing his bill has been so protracted that he should be barred by laches in maintaining it. To support this contention the demurrants stress the proposition that equity will sometimes test the delay upon which a charge of laches is predicated by reference to the analogous period of limitations prescribed by the statute of limitations for the bringing of actions at law. But as has often been said by the courts not only of this State but elsewhere, periods of limitations are not binding in equity, though they may be consulted, where the cause is strictly equitable in nature. In equity laches may exist, according to circumstances, even though the periods of limitations at law are far short of having arrived, and may not, according to circumstances, be asserted to exist even though such periods have long elapsed.
[5, 6] What period of limitation at law should this court consult for the analogy in this case? Should it be the three year period prescribed by section 5129, Revised *Page 88 
Code 1935, or the six year period prescribed by section 5131, Revised Code 1935? The demurrants take the former, the complainant the latter. But the agreement in this case was under the hand and seal of the parties. Therefore, if the action were at law, neither of those sections would apply. An obligation that arises out of a sealed instrument appears to be left by our statutory law, so far as limitations of action are concerned, to the common law. And that law prescribes no absolute bar due to the lapse of time, but only a presumption of satisfaction after twenty years.
Therefore, solicitors are in error when they assume that in three years or even in six years, this complainant would be confronted with an absolute bar if he were permitted to sue at law.
In Childs v. Missouri, etc., Ry. Co., 8 Cir., 221 F. 219, the court said [page 222]:
"When a suit [in equity] is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches."
[7] The defendant can point to nothing on the face of the bill as showing anything in the way of extraordinary circumstances which require the application of the doctrine of laches. All the allegations of the bill tend to a contrary showing. The complainant says he was diligent in making repeated efforts to get together with Whittaker in adjustment of their controversy. He went so far as to sue at law. Whittaker cannot have been lulled into a belief that the complainant considered the matter between them as closed. I can discover nothing from the bill that would lead the court to say that the complainant has slept on his rights to Whittaker's prejudice.
I have examined the cases cited by the demurrants upon this question of laches, based solely on the lapse of time. Those cases show inaction on the part of complainants of from eleven to thirty years, under circumstances where predecessors to parties and where witnesses, all having knowledge of the facts, had died, and records of long distant transactions had been lost. Their facts show that great prejudice would have resulted to the defendants if they were required to answer to things that time had either obscured or blotted from view.
But such is not this case. To be sure Mrs. Whittaker has died. But she was a minor, very minor, person in her relation to this controversy. Her sole part in it was to receive six hundred dollars upon the execution of a deed as the value of the land. The real and substantial part of the agreement, the one that this bill seeks relief upon, is the part that dealt with the construction of the house, the materials bought, the bills paid and the hours of labor spent. All these matters were between the complainant and Whittaker. Mrs. Whittaker had no interest in them. Whittaker is living and ought, in view of the repeated demands upon him for a settlement, to have in hand the data necessary to state an account. Mrs. Whittaker, if living, could not be expected to possess information with respect to those things which did not concern her.
At all events there is nothing in the bill which shows that it was filed so late after the events that Whittaker can be said to have been prejudiced by the delay.
[8] 4. Lastly it is said that a demand for an accounting is a condition precedent to the right to maintain a bill for an accounting. Even so, and conceding the proposition for the sake of the argument, the bill shows in substance frequent demands.
 The demurrer will be overruled. *Page 108