5 So.2d 781
### ALEXANDER v. HICKS et al.
### 3 Div. 361.

Supreme Court of Alabama.
Jan. 22, 1942.

Gipson & Gipson, of Prattville, for appellant.

Booth & Duncan and Guy Rice, all of Prattville, for appellees.

BOULDIN, Justice.

Bill by mortgager of real estate against the mortgages for accounting and redemption.

On October 29, 1919, appellees sold and conveyed to appellant the tract of lands involved.

The price was $10,087.50, of which $1,000 was paid cash, balance secured by mortgage and instalment notes.

The bill was filed January 20, 1936. The final decree, May 13, 1941, decreed a right of redemption, and without a reference the trial court proceeded to ascertain and decree the amount of the mortgage debt as of the date of the decree, $11,246.82. This procedure appears to have been in keeping with the wishes of the parties.

The amount so found is challenged on this appeal.

Many controverted issues of law and fact were presented. Among them the right of abatement of the purchase money because of a shortage of acreage, the amount received by the mortgagees from sales of standing timber on the lands, the rents for which the mortgagee in possession for many years should account, and waste or deterioration of the property from neglect, &c.

The trial court made no special finding on any of these issues, and stated no account disclosing how he arrived at the sum decreed. The witnesses were not examined before him. Our statute provides this court shall review the cause without a presumption in favor of the decree. We call attention to this situation for the purpose of suggesting to counsel and trial judges that in cases of accounting, such as this, equity procedure has wisely provided for a reference with appropriate instructions, wherein the register or special referee may see and hear the witnesses, state an account disclosing his findings on the several issues; with further procedure for facilitating a review. Certain presumptions support his findings of fact. Such is the better practice.

Without committing this court to any construction of our statute, which would deny our right to reverse the cause, and order a decree of reference in such cases, we proceed to consider the entire record and render a decree finally settling the litigation.

We deal first with the question of abatement of the purchase price for shortage in the acreage. The deed recites: "Said lands containing in the aggregate eight hundred and seven (807) acres, more or less." A later survey of the lands disclosed the true acreage to be 757.50 acres, a shortage of 49.50 acres.

Complainant's testimony tends to show the lump price of $10,087.50, was fixed on the assumption that the tract contained 807 acres, and the agreed price was $12.50 per acre. Respondent's testimony tended to show the lump price $10,087.50 was for the tract within well defined boundaries, be the same, more or less than the acreage named. 807 acres at $12.50 per acre is precisely $10,087.50. These odd figures are quite conclusive that the price was arrived at in this way.

The words "more or less" in this connection have been often construed.

■ "The words 'more or less' usually mean 'about,' 'substantially,' or 'approximately,' and imply that both parties assume the risk of any ordinary discrepancy, such as unequal acreage of government subdivisions, or estimates on small fractions bounded by the meanderings of a stream. If the price is stated as a lump sum, and not so much per acre, it implies prima facie that the parties have so contracted, and no survey is contemplated to ascertain the exact acreage.

"But * * * if it clearly appears the parties contracted upon the basis of acreage, and the lump price was agreed to upon a mutual mistake grossly affecting the consideration upon which the agreed price was fixed, equity will grant appropriate relief." Hill v. Johnson, 214 Ala. 194, 195, 106 So. 814, 816.

In 26 C.J.S. Deeds, § 102, the rule is thus stated: "The rule as to the effect of the use of the words 'more or less' is sometimes stated in terms to the effect that such words are intended to cover slight or unimportant inaccuracies, and, in the case of a sale by the acre, the words are usually construed to cover merely such inaccuracies."

■ Where, as here, the lump sum price was based on a price per acre, and this appears from the face of the deed, and there is a substantial shortage of acreage disclosing a mistake entering materially into the transaction, and no conflicting equities have intervened, we hold the grantee entitled to a proportionate abatement of the purchase money. Complainant is entitled to an abatement to be credited on the mortgage debt in the sum of $618.75 as of the date of the mortgage, October 29, 1919.

■ Touching timber sold from the lands by consent of parties, the burden was on complainant to show the amounts to be credited on the mortgage debt.

■ The evidence is in sharp dispute as to whether the sale of timber in 1923 was for $2,000 or $1,500. The latter sum was credited on a purchase money note. The statement furnished by respondents to Alexander Brothers, the brothers of complainant looking after her affairs, showed the annual interest of 1928—$395.25. This sum represented 6% interest on a principal of $6587.50, being the amount of the mortgage debt less $2,500, of which $1,- 000 was paid in money by the mortgagor. The other $1,500 must needs represent the proceeds of the timber. Without further detail we conclude complainant has not sustained her claim for credits on account of timber sold other than $1,500 for sale in 1923, and $275 for sale in 1931.

The rents chargeable to the mortgagee in possession present the most difficult question in the case.

In our early cases a mortgagee in possession, without foreclosure, was held to be accountable for rents collected and such as he failed to receive through gross negligence, wilful default or fraud. Barron, Meade & Co. v. Paulling, 38 Ala. 292.

In Sloan v. Frothingham, 72 Ala. 589, 606, the rule is thus stated: "A mortgagee, entering into possession of the mortgaged premises before foreclosure, is accountable for the rents and profits he may receive, or which he could with reasonable diligence have received."

Later cases treat reasonable care and diligence as defining an absence of wilful default or gross negligence. American Freehold Land Mortgage Company of London, Limited, v. Pollard, 132 Ala. 155, 161, 162, 32 So. 630; Smith v. Stringer, 220 Ala. 353, 356, 125 So. 226.

High authorities elsewhere do not treat these statements of the lawful obligation of the mortgagee in possession as having the same import.

In 36 Am.Jur. 842, § 305, after stating the rule of early cases proceeds: "Other courts take the view that on an accounting a mortgagee in possession will be charged not only with the rent actually received, but also with that which, with reasonable diligence, should have been received from the mortgaged premises during the period of his possession. This rule is particularly applicable where there has been bad faith, wilful default, fraud, or neglect. If the mortgagee does not keep an accurate account of the rents received, he may be charged with the fair rental value thereof."

41 C.J. 615, reads: "A mortgagee in possession is generally regarded as a constructive trustee, being subject to an accounting by the mortgagor and those claiming under him, and he is bound to manage the property in a reasonably prudent and careful manner, so as to keep it in a state of good preservation and make it productive."

We have fully recognized a trust relation on the part of the mortgagee in dealing with the mortgagor's equity of redemption in other equity proceedings.

 We regard the trend of our own cases, as well as the weight of authority, to require "reasonable diligence," that diligence which one of ordinary diligence exercises in dealing with his own property. This is the just and equitable rule.

By common consent the possession of the tract of lands was turned over to the mortgagee about January 1, 1926. No written agreement was made. It appears the mortgagor was to continue paying the taxes, and did so for a few years.

The mortgagee has kept no account of the value of rents received except for some three years. They were derived from rent of farm lands, such portion of the open lands as were rented to tenants on the basis of one bale of cotton to the mule. About three bales of cotton and a fraction of a bale, appears to have been received from year to year. Prices from year to year are not given. In this state of the record the reasonable rentals must be ascertained as best we may. The mortgagee, unless special circumstances call for a different course, is justified in pursuing renting and farming methods prevailing among diligent farmers on similar lands under like conditions.

He would not be required to undergo the outlay and do the planning to convert a cotton farm into a livestock farm.

He should, however, keep the tenant houses in proper repair, exercise reasonable diligence to rent the tillable lands to available tenants on terms yielding fair rentals; reasonably avoid a curtailment of acreage or deterioration of the lands by neglect or bad farming.

Upon consideration of the entire record we conclude the complainant is entitled to a credit for reasonable rents for the years 1929 to 1941, inclusive, on a basis of $225 per annum. The rents prior to 1929, we think, should be treated as properly applied as per statement of account above noted.

The items entering into on accounting, as we see it, are these:

Debits: Balance on principal $6,587.50, with interest thereon at 6% from January 1, 1929, to January 1, 1942, plus the unpaid balance on interest for 1928, $326.62; taxes paid by the mortgagee in possession, as per agreed statement, plus taxes due October 1, 1941, $1,087.97; repairs on tenant houses, $160.

Credits: Abatement for shortage in acreage $618.72, with interest at 6% from October 29, 1919, to January 1, 1942; proceeds timber sold in 1931, $275; reasonable rents for 1929 to 1941 inclusive at $225 per annum.

Taxes and repairs constitute a first charge on the rents from year to year. At no time have the credits exceeded the accrued interest, and under our statutes are to be applied to accrued interest.

Hence, no interest is allowed on rents, taxes paid, or outlays for repairs.

On this basis of accounting we find the balance due on the mortgage indebtedness as of January 1, 1942, $8887.35. The decree of the trial court will be modified accordingly.

The decree will be further modified so that in event of foreclosure, the costs of suit, regardless of what the property brings on foreclosure sale, shall be paid from the proceeds of sale.

As thus modified, the decree is affirmed.

The costs of appeal in this court and the court below are taxed against appellees.

Modified and affirmed.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.