No. 20,011.

A. REINHARDT v. NORMAN F. MEYER, ET AL.

(385 P. [2d] 597)

Decided October 7, 1963.

Messrs. JONES, MEIKLEJOHN, KILROY & KEHL, for plaintiff in error.

Mr. EMORY L. O'CONNELL, for defendants in error Norman F. Meyer and Ethel E. Meyer.

Mr. GEORGE H. LERG, Mr. ALEX STEPHEN KELLER, for defendants in error Austin G. Kirkpatrick and Anna O. Kirkpatrick.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THIS action concerns a boundary dispute involving land in Jefferson County. We shall refer to the parties by name.

The record discloses that on September 12, 1956, Austin G. and Anna O. Kirkpatrick by warranty deed conveyed to A. Reinhardt the southwest quarter of the northeast quarter of section 12, township 6 south, range 71 west, 6th P.M. Further, that at that time Reinhardt knew that the southerly boundary of the tract was marked by an east-west fence situated approximately

sixty-seven feet north of the center section line. Norman F. Meyer and Ethel E. Meyer, two of the defendants in the trial court, at the date of Kirkpatrick's conveyance owned the quarter section on the south of the aforementioned land as well as other lands including the southwest quarter of the section. The Meyers derived their title from the executrix of the estate of one Martin L. Blakeslee. The fence in question cut off 2.4 acres of land valued at $800.00 per acre by Reinhardt.

Reinhardt brought this action against the Meyers to recover the disputed parcel and for other relief against both them and the Kirkpatricks; in a second and alternative claim he sought damages for breach of warranty against Kirkpatrick together with his costs.

Upon motion, following trial to the court, the action was dismissed as to the Kirkpatricks. The court found that the parties had intended the deed to convey "only to the fence line and not beyond and that neither party ever intended the conveyance to be the exact legal description. (And) * * * that the defendants have not breached any of the covenants of their deed to the plaintiff * * * ." The court also found that title to the disputed strip of land had vested in the Meyers and that they and "their predecessors in title and interest have been in the exclusive possession and occupancy of the land (in dispute) * * * continuously, openly, notoriously, peaceably, uninterruptedly and adversely to the plaintiff and his grantors and predecessors in interest for more than twenty years immediately preceding the commencement of this action * * * ."

Feeling aggrieved by his failure in the trial court, Reinhardt seeks relief by writ of error. Though he urges seven grounds for reversal, they may be summarized in five points, as follows:

(1) The fence in question was only a barrier fence and there is no evidence to sustain the trial court's finding that adverse possession had vested the Meyers with title;

(2) That even if title were acquired by adverse possession from Reinhardt's predecessor in title, it is not now in the Meyers since the Blakeslee description was by governmental subdivision and did not expressly include the disputed parcel;

(3) The description used by the trial court in vesting title in the Meyers is defective as to *the Meyers' title;*

(4) Injunctive relief against Reinhardt was improperly granted; and

(5) Reinhardt's prior knowledge of the fence location and a possible defect in the title as a result thereof does not prevent recovery of damages, including attorneys' fees, under a warranty deed for failure to convey title as set forth therein.

We will consider these points seriatim.

I.

As to whether the fence, which Reinhardt admits has been on the ground for over 30 years, actually served as a boundary line between the two properties, it is sufficient to say that there was little conflict in the record with nearly all the evidence sustaining the trial court's conclusion of open, notorious, continuous, adverse possession for more than twenty years. No citation of authority is necessary to confirm that this court will not interfere where the record, as here, discloses ample support for the trial court's conclusion. It is well to point out, however, that the evidence includes photographs of the fence and disputed tract, showing a well defined area. Both the pictures and testimony describe a barn and shed, once belonging to Blakeslee and now to the Meyers, which have long stood on the disputed parcel. The undisputed testimony is that the balance of the land had been used for grazing for well over the statutory period.

It is immaterial, as urged by Reinhardt, that as to another owner on his west, that a few years prior to this action the fence line had been moved south on vacant land to the center line of the section with

Blakeslee's knowledge and without protest. The evidence relating to the barn and shed and use of the land in dispute, as between these parties, cannot be overcome by speculation as to why a different state of facts existed as between Blakeslee and other owners not parties to this action. The net effect of the judgment, amply supported by the record, is that both Reinhardt and his predecessors in title for over thirty years recognized and acquiesced in the fence as a boundary line, and not as a mere barrier fence to turn livestock.

## II.

As to Reinhardt's contention that title to the disputed parcel lies in Blakeslee's heirs because the executrix failed to expressly convey it, the answer is that it is no concern of Reinhardt's as to who owns this land, for the trial court determined that he does not. It is Hornbook law, requiring no citation of authority that Reinhardt, being out of possession, can succeed only on the strength of his own title and not on the weakness, if any, of the Meyers'.

## III.

As to the description used by the trial court, we have to say again that this is of no concern to Reinhardt except as to the difficulty which may be encountered in legally establishing the line itself so that he will know where it is. As we understand it, he makes no complaint on that score. We point out that the better practice is to describe such a line in the decree itself by metes and bounds tied to quarter section corners. However, we find no error where, as here, the trial court used a legal description furnished by Reinhardt as part of the pleadings which incorporated by reference attached thereto a surveyor's plat and description which in part stated: "I further certify that I have found the fence lines and improvements as shown on the map on June 4, 1960, and the same are correctly delineated below."

## IV.

As to the injunctive relief awarded we also per-

ceive no error. The Meyers' closs-claim sought to quiet title in themselves as to Reinhardt and asked that he be enjoined from interfering with their claimed possession and use. The trial court, having found for the Meyers, certainly had jurisdiction to grant the additional relief of ordering Reinhardt not to interfere with the lawful possession of his neighbors.

V.

Reinhardt's claim against the Kirkpatricks for alleged breach of warranty has no merit under the facts of this case. He was never in possession of the land and gained no possession of it by his deed nor was he ousted from possession at any time.

True it is, as he contends, that even though a grantee knows at the time of conveyance that his grantor's title is defective or that the grantor had no title to part of the land, it does not generally affect the grantee's right of recovery for a breach of warranty. *Hoke v. Welsh,* 162 Neb. 831, 77 N.W. (2d) 659 (1956); and see: 21 C.J.S. 896, 898, Covenants. This, however, does not prevent a grantee from being estopped to assert his claim, as occurred here. See: *Kutz v. McCune,* 22 Wis. 628, 99 Am. Dec. 85 (1868); 21 C.J.S. 988, supra, and 14 Am. Jur. 552, Covenants, Conditions and Restrictions. In *Eriksen v. Whitescarver,* 57 Colo. 409, 142 Pac. 413 (1914), a case where a defendant had prior knowledge of an irrigation ditch on the land conveyed, the court applied the above rule; however, it acknowledged that a contrary result could occur when in addition to the notice or knowledge " * * * at least something in the transaction * * * (disclosed) that the parties intended the incumbrance should be excluded from the operation of this covenant."

In the instant case the trial court considered not only testimony of the parties' prior conversations about the fence and its location north of the known center section line but also the preliminary and final purchase and sale agreements drafted by Reinhardt, as supplying

the ingredients for an exception to the general rule and as estopping Reinhardt's right to enforce any claim for breach of warranty for failure to convey the precise land described in the deed. In pertinent part the preliminary "Agreement" provided for a conveyance of: "Forty (40) acres more or less the exact boundary lines thereof to be determined by a survey furnished by the seller." Then followed a space for the insertion of a legal description.

The final signed "Agreement" required a warranty deed for: "The SW ¼ of the NE ¼ of Section 12, Township 6, South [sic] Range 71 West, consisting of 40 acres more or less."

The final agreement again required *the seller* to furnish a survey for the boundaries "on south and west of 40 acres of the acreage conveyed by this agreement, and complete a four (4) strand barb wire fence on the East and ½ of fence on west West [sic] side of the forty acres." Taking all the evidence together, we find no error in the application of the principal of estoppel to the facts disclosed in this record.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE PRINGLE concur.