**Thomas J. REED and Sally Reed, his wife, Plaintiffs,**

**v.**

**Loretta HASSELL, Defendant.**

Superior Court of Delaware, Sussex.

June 18, 1975.

Robert W. Tunnell, Tunnell & Raysor, Georgetown, for plaintiffs.

George A. Bramhall, Georgetown, for defendant.

OPINION

CHRISTIE, Judge.

By contract dated August 16, 1969, the plaintiffs, Thomas J. Reed and Sally Reed, his wife, agreed to purchase from Andrew Hassell (who died before the transaction was completed) and Loretta Hassell, his wife, Lots 82 and 83, Second Addition, Bay View Park, Baltimore Hundred, Sussex County, Delaware.

The printed contract form used by the parties provided that the title was to be "good and merchantable, free of liens and encumbrances except . . . publicly recorded easements for public utilities and other easements which may be observed by the inspection of the property."

By deed dated February 4, 1970, Loretta Hassell (the surviving seller and the defendant in this action) conveyed the lots to plaintiffs pursuant to the contract using a special warranty deed as required by the contract.

At the time of the contract and at the time of the conveyance, there was an existing road known as Hassell Avenue which (contrary to the information on the recorded plot plan) seriously encroached upon Lot 82 so as to deprive that lot of about 25 percent of its square footage. This encroachment reduced the lot to a relatively small, inconvenient lot which will be difficult to build upon in view of zoning requirements which include set-back and side line restrictions.

By this suit, plaintiffs seek damages on account of the encroachment. There is no evidence that defendant knew that the road

constituted an encroachment at the time of settlement and, of course, the plaintiffs were unaware of the encroachment at the time of settlement.

The evidence indicates that the intention of the seller was to convey building lots essentially as they were shown on the plot plan, and the intention of the buyers was to buy such lots because they were of such size and shape as to be suitable for the construction of houses. Although there was an exception in the contract as to easements observable by inspection of the property, it is clear that the agreement would never have been entered into if it had been known that there was a major encroachment which severely limited the usefulness of the lot. Indeed, the seller made an innocent and unknowing representation to the buyers to the effect that she was able to convey such lots essentially as shown on the plot plan. This the seller was unable to do.

At the time of settlement there was heavy and tall growth on the lots which made it impossible to inspect the boundaries of the land or to measure the lots without costly or time-consuming work to cut down portions of the growth. During the two summers after settlement, the plaintiffs personally cleared the land. In October, 1973, the land had been cleared to the extent that a survey could be conducted and then, for the first time, it was discovered by a professional surveyor that the road was so located as to constitute a major encroachment on Lot 82.

Plaintiffs seek damages based upon alleged "misrepresentation, deceit and fraud" and, by informal amendment of the complaint, they, in the alternative, seek damages on account of an alleged breach of the covenant of warrant contained in the deed.

■ At the hearing, plaintiffs failed to establish a factual basis for recovery on account of "misrepresentation, deceit and fraud" as such, but it was clearly established that the road constituted a breach of the covenant of special warranty of fee simple title free of encumbrances which the law reads into deeds such as the deed issued by the seller to the buyers in this case. 25 *Del.C.* § 121.

Thus, the question to be resolved by the Court is whether a major encroachment not known to be an encroachment by either the seller or the buyers at the time of settlement gives rise to an action for damages after such encroachment is discovered by the buyers many months after the deed had been accepted by the buyers. Resolution of this issue, in turn, depends in part upon the effect or lack of effect which is given to the provision in the sales contract which excepted from the title guarantees contained in such contract "easements which may be observed by an inspection of the property."

As to this provision of the contract, plaintiffs claim first of all that the encroachment could not be discovered by inspection because of the heavy and tall growth on the land. Plaintiffs' testimony about the growth is supported by a surveyor who indicated that it would have been necessary to cut a portion of the growth in order to make a survey.

The encroaching road itself was, of course, in plain sight and easily accessible. It appears to constitute the access to the lots. What was not readily accessible were the boundaries of the lots, a survey of which would have shown that the road encroached in Lot 82. Had these boundaries been established by survey, it would have been apparent that the existing road cut across Lot 82 so as to deprive it of about 25 percent of its square footage.

■ ■ I find that, under the circumstances here present, the encroachment was one which may have been observed by an inspection of the property, but I also find that the parties did not intend that the risk of a major encroachment was to be assumed by the buyers under the con-

**160**

tract or the deed here involved. The contract did not specify that the only easements excepted from the title guarantees were those discoverable by any easy-to-conduct amateur inspection free of cost, and it is apparent that a meaningful inspection would involve physical labor and the cost of hiring a surveyor. Plaintiffs' election not to go this expense did not render the inspection impossible; rather, plaintiff assumed the risk of easement encroachments not going to the essence of the contract. The contractual provision provided in legal effect that defendant did not guarantee against existing easements which would be revealed by a survey, but it was also clearly implied in the contract that seller owned and was in a position to convey essentially what was shown on the plot plan as Lot 82.

Plaintiffs also contend that, in any event, the contract "merged" with the deed at time of settlement and, at that time, the contract became void as a separate document. Plaintiffs say the effect of this "merger" is that the seller is now held to the terms of the special warranty of title which the law attaches to a deed and seller is deprived of any benefit from the less exacting terms of the contract pursuant to which the special warranty deed was issued.

We come at last to the real crux of the case: Does a savings clause in the real estate sales contract survive the issuance of a special warranty deed so as to protect the grantor from liability for an encumbrance which was unrecognized by the parties but was in fact in basic derogation of the title the deed purported to convey?

The solution to the problem lies in the application of the merger rule under which the law is generally deemed to provide that a deed makes full execution of a contract of sale and constitutes the overriding contract between the parties as to what the seller conveyed to the buyer thereby rendering ineffective or obsolete any inconsistent terms of the prior contract.

This rule is summarized in 26 C.J.S. Deeds § 91 in the following language:

"Accordingly, although the terms of preliminary agreements may vary from those contained in the deed, the deed alone must be looked to for determination of the rights of the parties, in the absence of fraud or mistake, and the rule as to merger has been held to deny operative effect to prior agreements with respect to set-back restrictions, the amount of land to be conveyed, the nature of the title transferred, freedom from encumbrances, permissible use of the property, and reservation of an easement."

Judge Daniel J. Layton confirmed this rule of law in Delaware in the case of *Re v. Magness Construction Co.,* Del.Super., 117 A.2d 78 (1955) when he wrote the following:

"The authorities are uniform in holding that where a Deed is executed and delivered pursuant to a Contract of Sale of Realty, the latter merges with the former and becomes void."

See also *Carey v. Shellburne,* Del.Ch., 215 A.2d 450 (1965) and *Pryor v. Aviola,* Del. Super., 301 A.2d 306 (1973).

The C.J.S. article goes on to observe, however, that the merger rule is subject to exceptions and *the intent of the parties is controlling* the question being one of construction (emphasis added). See also 6 Corbin on Contracts (1962), § 1319.

The difficulty with the merger rule as applied to the case at bar is that it does not appear to have been developed to resolve the type of problem here posed. The merger rule appears to have been developed to resolve issues raised where a seller of real property undertook certain obligations in a contract of sale and then delivered something less than he promised as, for example, when seller delivered a deed not carrying out all the contract promises

or a lot with certain encumbrances or containing a lesser acreage than contracted for. So it is that the annotation as to this type of merger is titled "Deed as superseding or merging provisions of antecedent contract *imposing obligations upon the vendor*." 38 A.L.R.2d 1310 (emphasis added). The annotation then goes on to show that, although all jurisdictions considering the matter recognize the merger rule, still there are many special situations where the seller is required to comply with promises made in the sales contract even though a deed has been delivered and accepted. The actual use of the merger rule can often be explained as a way of regarding the delivery and acceptance of the deed as a sort of accord and satisfaction. See Corbin, ob. cit.

It could be argued that this large collection of cases and the learned writings about these cases find little direct application here because, in the case before the Court, the sales contract contained an escape clause as to easements for the benefit of the seller. The cited merger cases deal with situations where the purchaser is seeking to get what he originally bargained for but didn't get because the deed he received failed to carry out the express terms of the contract. The case at bar, on the other hand, deals with a case where the seller is seeking to get by with delivering what she claims the purchaser bargained for (i. e., a lot subject to any existing easements which could be discovered by inspection) even though the deed which the seller delivered to the purchaser appears to go beyond the requirements of the sales contract and purports to convey a title clear of such flaws.

■ Under the merger rule, a deed is often deemed to supersede promises contained in the sales contract and, if the purchaser accepts the deed as compliance with the sales contract, he cannot seek additional rights he formerly had under the contract unless those additional rights survived the acceptance of the deed because they fell within one of the numerous exceptions to merger rule. Is the converse true? That is, does an unconditional special warranty deed supersede the lesser undertakings or escape clauses contained in the sales contract so that the seller must make good on the warranties of the deed even though the seller was expressly excused from such undertaking in the sales contract?

■ I think, under the circumstances here present, the merger rule should be applied and the seller should be held to the warranties contained in the deed because the obvious intent of the parties from the very beginning was that the seller would convey and the buyers would receive the two building lots essentially as shown on the plot plan. The exception as to easements contained in the sales contract is found to have been intended to protect the seller against only such easements as do not go to the essence of the bargain and do not seriously limit the usefulness of the lot. The exception surely was not intended to force buyers to accept a lot with such a serious encroachment therein as to render the lot almost useless for the declared purpose which buyers had in mind when they bought.

In short, I find that plaintiffs have established their right to recover damages because defendant failed to convey a good title to Lot 82 to plaintiffs free and clear of all easements except such discoverable easements as did not destroy or severely limit the intended use of the lot. Such major failure and mistake constituted not only a breach of the terms of the sales contract, but more importantly from a technical legal viewpoint, such failure is contrary to the terms of the special warranty deed delivered by defendant to plaintiffs. The merger rule is deemed to apply here because it serves to carry out the basic intent of the parties. The warranties in the deed are deemed to be binding on the seller under the circumstances.

Arguments were not specifically presented under the theory of mutual mistake of fact, but a similar result might have been reached under that theory.

The evidence on damages appears to be somewhat inconclusive since the parties presented their damage evidence under vastly differing theories as to the correct measure of damages.

Further argument and possibly further evidence will be considered before the Court designates the amount of damages.