The STATE of Delaware, upon the Relation of the SECRETARY OF the DEPARTMENT OF TRANSPORTATION, Plaintiff,

v.

The REGENCY GROUP, INC., Defendant.

and

LEON N. WEINER & ASSOCIATES, INC., Defendant and Third–Party Plaintiff,

v.

HOWARD L. ROBERTSON, INC., Third–Party Defendant.

MERCANTILE–SAFE DEPOSIT AND TRUST COMPANY, Plaintiff,

v.

INPROJET CORPORATION and G.R.G. Realty Corp., Defendants.

and

The STATE of Delaware (Through the DEPARTMENT OF TRANSPORTATION), Defendant and Third–Party Plaintiff,

v.

HOWARD L. ROBERTSON, INC. and Leon N. Weiner & Associates Inc., Third–Party Defendants.

Superior Court of Delaware, New Castle County.

Submitted: Sept. 27, 1990.
Decided: April 3, 1991.
As Corrected and Clarified: May 16, 1991.

David S. Lank, of Theisen, Lank, Mulford & Goldberg, P.A., for the State of Del.

Richard D. Allen, of Morris, Nichols, Arsht & Tunnell, for The Regency Group, Inc. and Inprojet Corp.

Kevin Gross, of Morris, Rosenthal, Monhait & Gross, P.A., for Leon N. Weiner & Associates, Inc.

Walter P. McEvilly, Jr., of Prickett, Jones, Elliott, Kristol & Schnee, for Howard L. Robertson, Inc.

## OPINION

HERLIHY, Judge.

Presently before the Court are two motions for summary judgment. The first motion is that of third-party defendant Howard L. Robertson, Inc. [Robertson]. The second motion is that of the plaintiff State of Delaware [State].

There are now two pending consolidated cases in this Court. They involve actions for damages resulting from three land transactions. In two prior conveyances the defendants had sold portions of land overlapping the area deeded to the State. In the third and final transaction, the State was the grantee. The first case is an original action which the State filed in 1987 against the predecessor of defendant The Regency Group [Regency] and against Leon L. Weiner & Associates [Weiner][1]. Those defendants cross-claimed seeking indemnity and/or contribution from each other. Weiner in turn brought a third-party action for negligence against Robertson and Regency cross-claimed against Robertson.

The State's original action in this Court sought damages for breach of covenant of title. The State claims that, as part of a multi-acreage conveyance to it, the defendants included 1.2207 acres of land which they had previously conveyed to another in a separate larger transaction. Those others did not join in the grant to the State. The State seeks a proportionate return for the purchase price it paid. The State was permitted on January 15, 1991 to amend its complaint in this original action to include an action for ejectment.

In early 1990 an action originally instituted in Chancery in 1982 was transferred to this Court by the State. The Chancery matter started as a mortgage foreclosure action. While the foreclosure action was unopposed, there developed a dispute of whether 25.353 acres owned by defendants were or were not covered by the mortgage. During that litigation, the State filed an action for damages involving the 25.353 acres. The State claimed a breach of the covenant of title by the defendants and negligence by Robertson. The 25.5353 acres were part of a larger conveyance to the State and a part of an earlier larger conveyance to an unrelated grantee who had not joined in the conveyance to the State.

Two opinions arose during the course of that litigation. *Mercantile–Safe Deposit and Trust Co. v. Inprojet Corp.*, Del.Ch., C.A.No. 6910, 1984 WL 19483, Hartnett, V.C. (October 12, 1984) and *Mercantile–Safe Deposit and Trust Co. v. Inprojet Corp.*, Del.Ch., C.A.No. 6910, 1987 WL 10526, Hartnett, V.C. (April 30, 1987).

Chancery ultimately determined that (1) all equitable issues had been resolved and (2) only claims for money damages remained. See January 2, 1990 letter of Vice Chancellor Hartnett. The State then elected to transfer the case to this Court.

The State's motion for summary judgment relates to the 25.353 parcel. Robert-

---

1. For convenience sake, the defendants and any predecessors-in-interest will be referred to as defendants.

son's motion relates to that parcel and the action involving the 1.2207 acres.

## I. FACTS

In the 1960's, as part of a large development project, defendants acquired substantial tracts of land in the Pike Creek Valley area of New Castle County. On June 22, 1970 the defendants conveyed 49.909 acres to Franklin Industries. On September 13, 1972, defendants [2] conveyed approximately 212.299 acres of their land to the Pike Creek Valley Country Club [Country Club].[3] In 1971, defendant Robertson had prepared plans, placed on record at various times, for the various parcels comprising the property conveyed to the Country Club. In August 1972, Robertson supplied a legal description of the Country Club land to the attorney for defendants.

Taylor Pierce [Pierce], currently Robertson's chairman, submitted an affidavit with Robertson's motion. He states that defendants also requested Robertson to prepare a description of the land/tentative right-of-way in Pike Creek Valley which the State was contemplating for use as a connector freeway from New Linden Hill Road to I-95. The area involved for the right-of-way was 89.897 acres. Robertson supplied defendants with a legal description of the right-of-way in March 1972. A portion of the right-of-way included the Country Club land-to-be.

Pierce states that the State did not ask Robertson to do any work in connection with the proposed right-of-way. Harvey Berry [Berry], Chief of Right-of-Way Division of the Department of Transportation, states, however, that the State did ask Robertson for its help and Robertson provided a metes and bounds description to the State in June 1972.

The State and the defendants signed a contract of sale on November 1, 1972. The property to be transferred is described as:

An irregular parcel of land as shown and noted on Division of Highways Plans 72–06–001 as prepared by Howard Robertson consisting of approximately 86.307 acres.

On December 22, 1972 defendants conveyed, under seal, 89.987 acres to the State for the right-of-way. Of that parcel, 25.353 acres had been conveyed in defendants' September 13 sale to the Country Club. The State purchased the right-of-way for $517,850. The September conveyance to the Country Club had been recorded several months before the conveyance to the State.

The State, per Berry, says it first discovered the overlap in 1982 after the Chancery action was started and some engineering work on the Country Club property had been performed. However, the State did have a title examination performed prior to the December 1972 purchase. As part of its motion, Robertson supplied an affidavit from Donald C. Taylor [Taylor], a highly respected, experienced, long-practicing, local attorney in real estate matters. As Taylor indicates, the State's title search preceding the December 1972 conveyance should have revealed the September 1972 conveyance and overlap in description. He found approximately 50 common metes and bounds in the two conveyances.

## II. LEGAL DISCUSSION

■ Summary judgment may only be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Wilson v. Joma, Inc.,* Del.Supr., 537 A.2d 187 (1988). The Court must consider the facts stated in a light most favorable to the non-moving party. *Schagrin v. Wilming-*

---

**2.** The grantors in these two transfers and the conveyance to the State were the same, namely, Frank A. Robino, Inc., Luigi Fortunato, Inc., Leon Weiner & Associates, Inc. and Pikecreek, Inc., all Delaware corporations. These persons and all other defendants will hereafter be referred to as "defendants"; see footnote 1, *supra.*

**3.** The Country Club later merged with the Robino–Ladd Company. That company subsequently conveyed the golf course to Reston Development Company which later conveyed it to Inprojet Corporation. Inprojet Corporations conveyed the Country Club property to Arcada Development, Inc., which later conveyed it to G.R.G. Realty Group Corp.

*ton Medical Center, Inc.*, Del.Super., 304 A.2d 61 (1973). If a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law, summary judgment is inappropriate. *Tew v. Sun Oil Co.*, Del.Super., 407 A.2d 240 (1979). A further consideration is that the disposition of litigation by motion for summary judgment should be encouraged, when possible, for it should result in a prompt, expeditious and economical ending of lawsuits. *Davis v. University of Delaware*, Del.Supr., 240 A.2d 583, 584 (1968).

## III. ROBERTSON'S MOTION

The defendants' third party action in the original action in this Court claims Robertson prepared the legal discription for the 1970 deed to Franklin Industries. They allege Robertson was negligent in preparing the legal description for the State which included the 1.2207 acres because it knew or should have known that the defendants had already granted that acreage to Franklin Industries.

The State's action against Robertson filed in Chancery in 1984 makes the same allegation of negligence. That is, the claim is that Robertson prepared descriptions for the September and December conveyances. The State contends that Robertson knew or should have known of the September 1972 conveyance when it prepared the description of the land to be conveyed to the State and should have made that known to the State. The defendants claim Robertson was negligent because it knew or should have known that defendants had made the September 1972 transfer to the Country Club and failed to tell the State.

Robertson denies any negligence. On March 29, 1989, Robertson filed a motion for summary judgment in Chancery. It raised essentially the same grounds there as it does here, albeit rephrased because of the differing legal principles involving an action in equity and an action at law. Robertson submitted a brief in support of its Chancery motion. The motion was pending when the Chancery action was transferred to this Court.

The bases of Robertson's instant motion are (1) the actions against it are time barred; (2) there is no evidence it breached a duty owed by it to anyone else in this litigation; and (3) the only evidence is that it properly performed its duties.

The State does not oppose Robertson's motion. The defendants oppose Robertson's motion on the grounds that (1) more time is needed for discovery on the issue of Robertson's role and its relationship to one or more of defendants and (2) it is premature to grant summary judgment.

### A

The defendants' response to Robertson's motion did not address the issue of the expiration of the statute of limitations. In its 1984 answer to the action for damages filed in Chancery and in its motion for summary judgment, Robertson raised the same time bar defense (couched as laches). The defendants can hardly be surprised by this defense.

The applicable statute of limitations to the defendants' claims against Robertson is 10 *Del.C.* § 8106 which provides:

No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action;....

■ This statute has been classified as an accrual statute of limitations. *Lembert v. Gilmore*, Del.Super., 312 A.2d 335 (1973). Tort actions accrue at the time of

injury. *City of Newark v. Edward H. Richardson Associates, Inc.*, Del.Super., 375 A.2d 475, 476 (1977). No one was injured in this matter until the defendants conveyed their lands to the State on December 22, 1972. *See Pioneer National Title Ins. Co. v. Child, Inc.*, Del.Supr., 401 A.2d 68 (1979). It is arguable that the injury occurred earlier, when Robertson prepared the description used by the State to create the deed. *Lembert*, 312 A.2d at 337. However, no one appears to have been injured until the overlap in conveyances occurred, which was December 22, 1972.

 Absent concealment or fraud, the statute of limitations would normally have begun to run that date. *Isaacson, Stolper & Co. v. Artisan's Savings Bank*, Del. Supr., 330 A.2d 130, 132 (1974). Further, the commencement of the statute of limitations may be postponed until the victim discovers or should have discovered inherently unknowable conditions or injuries resulting from negligent conduct. *Consolidated American Insurance Co. v. Chiriboga*, Del.Super., 514 A.2d 1136 (1986). The determination of whether the statute of limitations is tolled depends on whether the condition which is the product of the alleged negligence was inherently unknowable, and, if so, when the defendants knew or should have known of the condition. *Hodges v. Smith*, Del.Super., 517 A.2d 299, 301 (1986)

 The defendants' deed to the Country Club refers to plans prepared by Robertson dated June 7, 1971 and revised September 9, 1971. The deed to the State refers to a 1969 map, revised March 6, 1972, which Robertson prepared. The November 1, 1972 sales contract between the defendants and the State describes the land to be conveyed by incorporating a Robertson prepared document.

The defendants were the grantors in 1970 to Franklin Industries, the grantors in September 1972 to the Country Club and the grantors to the State in December 1972. They cannot claim to be unsophisticated persons. Robertson was involved with and for them.

The contract of sale referred to a specific Robertson description of which defendants cannot claim ignorance, which, if they did, would raise questions about their competency. They chose to sell their land to the State. They agreed to sell over 86 acres and must be attributed knowledge of what they had available to sell or not sell. That contract was signed after their sale to the Country Club and after their sale to Franklin Industries.

It is inconceivable how it was or could be inherently unknowable to them that they had transferred title to the State of over 26 acres to which they no longer had title. The overlap consisted of nearly 30% of the transfer to the State, not some insignificant or disputed segments.

There is everything present to show Robertson's involvement was known and not inherently unknowable. Even if Robertson had a duty to advise the State or the defendants of the prior transfers, it remains that Robertson's work product was openly being used. There was nothing unknown or unknowable to the defendants about that.

Under all these circumstances, the time of discovery rule does not operate to stay the start of the statute of limitations. *Lembert*, 312 A.2d 335.

The Court finds that the statute of limitations on any claims against Robertson started no later than December 22, 1972. The record is undisputed that no one filed action against Robertson, as required by § 8106, within three years of that date. Consequently, defendants' claims (and those of the State) against Robertson are barred.

**B**

 The defendants also contest Robertson's motion claiming they need more time to conduct discovery of certain statements Pierce made in his affidavit. They argue that they want to determine exactly for whom Robertson was working and who was saying what to whom. Defendants

urge this Court to defer ruling on Robertson's motion until that discovery occurs.

The affidavit Pierce filed in this Court was signed on December 1, 1988. Robertson originally filed the affidavit on March 28, 1989, along with its previous motion for summary judgment in Chancery. Simultaneously, the State was seeking removal of that action to this Court.

The second action was transferred to this Court in January 1990. At no time after Robertson filed its motion in Chancery until this Court heard oral argument on Robertson's motion on September 27, 1990 have the defendants sought or undertaken discovery of Robertson personnel. They presented no affidavits with their responses to Robertson's motion. They have not proceeded with discovery of their own personnel or supplied affidavits from them.

Robertson also filed with its motion in Chancery the same affidavit of Taylor which it has filed with its instant motion. Taylor opines that Robertson performed its job within the accepted standards existing in 1972. The defendants have not filed any responses to that affidavit.

■ When a motion for summary judgment is supported, as provided under Civil Rule 56, the burden shifts to the non-moving party or parties to demonstrate that there are material issues of fact. *Hurtt v. Goleburn,* Del.Supr., 330 A.2d 134 (1974); *Moore v. Sizemore,* Del.Supr., 405 A.2d 679 (1979).

Pierce's affidavit indicates Robertson did not know that its descriptions were going to be used as the basis for the two 1972 conveyances. Further, he says Robertson was not informed of either conveyance. Taylor's affidavit indicates that Robertson performed its functions within the then-prevailing practice in New Castle County. Further, he states, preparation of a land description is not deemed to be a certification of title by the surveyor. Defendants have not rebuted these statements. The Court finds these affidavits shifted the burden to the defendants to show a genuine issue of material fact.

Defendants have had approximately one and one-half years to rebut these affidavits. Further, they point to nothing in the record which provides the kind of support to show there is a genuine issue of material fact for trial. Civil Rule 56(e); *Nix v. Sawyer,* Del.Super., 466 A.2d 407 (1983). The Court cannot find anything in the record which shows that a genuine issue of material fact exists.

Therefore, Robertson's motion for summary judgment agsinst defendants (third-party plaintiffs) and the State of Delaware is GRANTED.

## IV. STATE'S MOTION

The State moves for summary judgment and an award of damages on the basis that the defendants breached the covenant of title in the conveyance to it. The defendants argue that the State waived any title defect or that there is a genuine issue of material fact of whether there was such waiver. The State's motion involves a series of issues which will be addressed separately.

### A

■ The State did not file its action against the defendants until long after the expiration of the three-year statute of limitations, discussed earlier, *supra,* at 1127–1128. Interestingly enough, the State does not argue that 10 *Del.C.* § 8106 is inapplicable to it as a soverign. *Kempner v. Aetna Hose, Hook and Ladder Co.,* Del. Ch., 394 A.2d 238 (1978); *State Board of Trustees of Del. State Hosp. v. Boyer,* 52 Del. 458, 159 A.2d 793 (1960).

■ However, it argues that the deed to it was under seal. While the deed did not have to be under seal, 25 *Del.C.* § 131, it was conveyed under seal. Contracts under seal are not controlled by the three-year statute of limitations. *Leiter v. Carpenter,* 26 Del.Ch. 85, 22 A.2d 393 (1941). The common law limitation of twenty years would apply. *Garber v. Whittaker,* 23 Del. Ch. 45, 2 A.2d 85 (1938). The State instituted its actions against defendants well within that period.

### B

The December 1972 deed to the State was executed in conformity with 25 *Del.C.* § 121 [4]. Such a deed creates a covenant of special warranty of fee simple title free of encumbrances. *Reed v. Hassell,* Del.Super., 340 A.2d 157 (1975); 25 *Del.C.* § 121(b).

The defendants argue that by being on notice of the September 1972 conveyance creating the approximate 25-acre overlap, the State waived any right to claim breach of covenant of title. At a minimum, the State was on constructive notice, if not actual notice. The prior conveyance had been on record for several months prior to December 22, 1972. The usual, careful title examination would have revealed the existence of that conveyance and the overlap.

A grantee's notice, even actual, does not defeat an action for breach of covenant of warranty of title. *Flaspohler v. Hoffman,* Mo.Ct.App., 652 S.W.2d 703 (1983); *Philbin Investments, Inc. v. Orb Enterprises, Ltd.,* 35 N.C.App. 622, 242 S.E.2d 176 (1978); *Foley v. Smith,* 14 Wash.App. 285, 539 P.2d 874 (1975); *Ziskind v. Bruce Lee Corp.,* 224 Pa.Super. 518, 307 A.2d 377 (1973). There is nothing in this record which suggests that the grantors and the State intended to exclude the overlap from the covenant. *See Reinhardt v. Meyer,* 153 Colo. 296, 385 P.2d 597, 600 (1963).

Therefore, the State did not waive its right to bring this action for breach of warranty. Consequently, it is unnecessary to pursue discovery on this issue.

### C

The defendants next argue that there is a genuine issue of material fact of whether there is an overlap. The record does not support defendants' contention. The Taylor affidavit, albeit filed with Robertson's motion, demonstrates an overlap in coveyances and the commonality of at least 50 metes and bounds.

However, more definitively, the State has supplied an affidavit from Ramesh C. Batta, a professional engineer and land surveyor.[5] Apparently it was his 1982 survey of the two 1972 conveyances in question which revealed or confirmed the overlap of 25.353 acres. His affidavit and survey clearly show where the overlap exists.

---

**4.**

(a) The following shall be a sufficient form of deed for the conveyance of real estate:

This Deed made this ........... day of —————————, A.D. .............

Between A. B., of ............, party of the first part and C. D. of ............, party of the second part.

Witnesseth, that the said party of the first part and in consideration of the sum of ............, the receipt whereof is hereby acknowledged, hereby grants and conveys until the said party of the second part.

ALL
(Description of premises).
(Recital of title).

In witness whereof, the said party of the first part hath hereunto set his hand and seal.

Sealed and Delivered in ...........(Seal)
The Presence of:
........................
........................

(b) A deed in the form prescribed in subsection (a) of this section, duly executed and acknowledged, unless otherwise restricted or limited, or unless contrary intention appears therein, shall be construed to pass and convey to the grantee therein and to his heirs and assigns the fee simple title or other whole estate or interest which the grantor could lawfully convey in and to the property therein described together with the tenements, hereditaments, franchises and appurtenances thereunto belonging, and the revisions and remainders, rents, issues and profits thereof. The words "grant and convey" in any deed shall, unless specifically restricted or limited operate as a special warranty against the grantor and his heirs and all persons claiming under him or them. Nothing contained in this section shall invalidate a deed not made in the form prescribed in subsection (a) of this section, but a deed made in the form heretofore in common use within this State shall be valid and effectual.

**5.** Originally, defendants The Regency Group, Inc. and Inprojet contested the State's motion on the grounds that a survey attached as an exhibit (1) was not accompanied by an affidavit and (2) did not show where the overlap occurs. The State filed a supplement to its motion which contained Batta's affidavit and which ties in the survey to show the overlap. Any argument that the State's failure to comply with Rule 56 by failing to provide an affidavit is moot.

With its motion, accompanying affidavits and materials, and its supplement, the Court is satisfied the State has shown there is no issue of whether an overlap exists. It has shown where the overlap is.

### D

The next issue involved in the State's motion is whether, as a matter of law, it is entitled to damages. The defendants have not addressed this issue and have provided no affidavits concerning the State's claim for damages.

The contract of sale between the defendants and the State states that the property being transferred is described as follows:

An irregular parcel of land as shown and noted on Division of Highways Plans 72–06–001 as prepared by Howard Robertson consisting of approximately 86.307 acres.

The contract does not refer to a per-acre price. The total price was $517,850. The December 1972 deed to the State indicates that two parcels were being conveyed. Parcel 1 consisted 67.390 acres and parcel 2 consisted of 22.507 acres. Both acreages were described as "more or less".

In opposing the State's and Robertson's motions, the defendants requested more time for discovery. In the State's case, the defendants' request related to their defense of waiver. They did not ask for additional time for discovery on damages, nor did they supply affidavits from their personnel relating to damages.

■ However, the Court will approach this issue not utilizing the State's letters and notes. One potential issue relating to the State's ability to recover damages is whether the sale to it was per acre or in gross. Usually a purchaser is allowed a per acre proportionate purchase price abatement when the sale is per acre. *Mills v. Brown*, Tenn.Supr., 568 S.W.2d 100 (1978). However, when a sale is in gross, absent fraud, the purchaser may not be entitled to a proportionate abatement as damages. *Maxwell v. Redd*, 209 Kan. 264, 496 P.2d 1320 (1972).

■ The parties here contracted to exchange "approximately 86.307 acres". The deed refers to two parcels of different acre-age. In this context, the Court finds that the sale was for a per-acre price. *Alexander v. Hicks*, 242 Ala. 243, 5 So.2d 781 (1942). Dividing the purchase price by the *contract* acreage comports with the State's notes of a $6,000/acre purchase price. Accordingly, on this approach, the State is entitled to a per-acre proportinate recovery. *Hagenbuch v. Chapin*, 149 Ill.App.3d 572, 102 Ill.Dec. 886, 500 N.E.2d 987 (1986); *Quick v. Williams*, 219 Mo.App. 336, 271 S.W. 834 (1925); *See* § E, *infra.*

■ Even assuming that the sale here was in gross, the State would still be entitled to the same proportionate recovery. The defendants contracted to sell 86.307 acres. That contract was signed November 1, 1972, several months after the conveyance to the Country Club in which the 25.353 acres had already been coveyed. The deed executed to the State conveyed 89.987 acres, more or less, of which 3.250 acres was already occupied by a roadway. Of course, whatever the acreage, it is now known that defendants did not have title to the 25.353 acres they conveyed to the State.

■ Sales of land in gross are not favored. Courts tend to favor sales by the acre. *Hagenbuch*, 102 Ill.Dec. at 888–89, 500 N.E.2d at 989–90. Usually a purchaser buying land in gross is entitled to a damage recovery where there has been fraud or a mutual mistake in fact. *Maxwell*, 496 P.2d at 1323. There is no evidence of fraud here. However, it is clear that the defendants did not intend to convey land to the State which they had already sold. Also, the State did not intend to take land to which the defendants did not have title. Further, the overlap consists of nearly 30% of the acreage the State intended to buy and the defendants either intended to sell or believed they had title to, or both. Therefore, there can be no question that a mutual mistake existed.

In the case of *Hoke v. Welsh*, 162 Neb. 831, 77 N.W.2d 659 (1956), the Court affirmed an award of damages where the grantors conveyed only half of the land described in the deed. They did not have title to the other half. The Court upheld a

proportionate abatement of the purchase price regardless of whether the conveyance was in gross or per acre. While the conveyance to the State was deficient in approximately 30%, versus 50% as in *Hoke*, the reasoning used in *Hoke* is persuasive.

The case of *Maxwell*, 496 P.2d 1320, also provides persuasive authority. There was an exchange of land in that case, one party believing it obtained 80 acres. The Court found the transaction to be one in gross. Later it was determined only 76.5 acres were transferred. The Kansas court noted that those cases which denied recovery to a purchaser of a property in gross presupposed the grantor had title to all of the land conveyed, even if that which was contracted for was less. The grantor there did not have title to the 3.5 acres in issue.

The *Maxwell* court also noted that an earlier Kansas case involving damage claims over a sale in gross did not involve an action for breach of warranty of title. The court upheld a proportionate award of monetary damages for the acreage deficiency for that sale in gross, except for interest awarded. *Maxwell*, 496 P.2d at 1326–27.

Based on *Hoke* and *Maxwell* and assuming the defendants' conveyance was a transfer in gross, the State is still entitled to a proportionate award.

### E

■■■■ There is a discrepancy in acreage as it relates to the issue of the amount of damages to be awarded. The contract indicated that approximately 86.307 acres were to be sold. That contract has now merged with the deed. *Reed*, 340 A.2d 157. The authorities cited herein supporting an award for damages for breach of the covenant of title, regardless of whether the sale is in gross or per acre, relate the proportionate recovery to the amount recited in the deed. *Maxwell*, 496 P.2d 1320; *Moore v. Ashbrook*, Tex.Civ.App., 197 S.W.2d 516 (1946); *Quick*, 271 S.W. 834. The State's action is based on the breach of covenant in the deed, not the contract.

The deed transfers 89.897 acres for $517,850 (the same price stated in the sales contract). At 89.897 acres, that price translates into a per-acre price of $5,760.48. For a 25.353–acre overlap, that price translates into an amount of $146,045.44 to the State.

Since the case authority supports an award on a per-acre basis and since the purchase price here and acreage conveyed are undisputed, there is no genuine issue of material fact on the damages to be awarded. Therefore, as a matter of law, the State is awarded $146,045.44.

### F

■■■■ The State seeks interest on the sum at 6% per annum from December 22, 1972. The State concedes, however, that it did not discover the acreage discrepancy for ten years. The record in this case is clear that a normal title examination in 1972 would have uncovered the prior conveyance and overlap.

The record reveals that the State learned in writing on September 14, 1982 from Ramesh C. Batta that there was an overlap. His letter to the State with the surveys showing the overlap are part of the State's motion.

The award to the State is a sum certain. The State is entitled to prejudgment interest. *Rollins Environmental Services, Inc. v. WSMW Industries*, Del.Super., 426 A.2d 1363 (1980). The State is awarded interest, at the applicable rate, on its award from September 14, 1982 to the date of this decision. 6 *Del.C.* § 2301(a); *see Mills*, 568 S.W.2d 100.

### V. SUMMARY

In sum, Robertson's motion for summary judgment against all parties in both actions is GRANTED. The State's motion for summary judgment against the defendants as it relates to the 25.353 acres is GRANTED. The Court directs the State to submit an order, after being circulated for consent as to form.

## MEMORANDUM OPINION

The State has informally[1] requested the Court to (1) correct an error in its April 3, 1991 decision regarding the acreage involved in the transaction between it and the defendants which affects the damages due the State, and (2) clarify the applicable interest rate awarded to the State on the judgment.

In the its original decision, the Court awarded damages on the basis of defendants conveying an overlap of 89.897 acres. This translated into a per acre purchase price of $5,760.48. The State has pointed out, and the defendants do not dispute, that the actual conveyance to the State is 86.307 acres. The State paid $517,850 for this acreage or $6,000 per acre.

Therefore, the Court will award damages based on a per acre purchase price of $6,000. The overlap was 25.353 acres. Accordingly, the Court's award to the State in its April 3, 1991 decision is corrected to read $152,118.

The State initially wrote that it sought clarification of the applicable rate of interest on its judgment. The Court originally ordered prejudgment interest at the applicable rate beginning September 14, 1982.

■ The State's initial request for clarification has now been itself clarified in two respects. First, is the applicable prejudgment interest rate 6 percent or the Federal Reserve Discount Rate plus 5 percent? 6 *Del.C.* § 2301(a). The State's action for damages relating to the 25.353–acre overlap was commenced in Chancery Court *after* the applicable rate of interest changed from 6 percent to the other rate. Further, the Court's award of damages was effective, for purposes of prejudgment interest, after the new rate system was enacted into law. Therefore, the applicable rate of prejudgment interest is the Federal Reserve Discount Rate plus 5 percent beginning September 14, 1982.

In subsequent correspondence to the Court, the State's initial request for clarification of the applicable interest rate is converted into a "request" to reargue the starting date for prejudgment interest. The State seeks to have such interest start on December 22, 1972, when defendants conveyed the land at issue here.

The Court's decision was filed April 3, 1991. The State's letter seeking reargument of this issue is dated May 1, 1991. Its original letter seeking "clarification", dated April 8, 1991, did not mention the interest rate issue. The State's second letter seeking clarification, dated April 29, 1991, did not seek to reargue the 1972 versus 1982 interest rate. Indeed, that letter argues that prejudgment interest should start September 14, 1982. On May 1, 1991 the State argued for the 1972 date.

The State's request for reargument comes late. Superior Court Civil Rule 59(e). Further, the Court considered and rejected the reasons for awarding the State interest from December 22, 1972. Those reasons remain valid.

The Court has considered the defendant's requests[2] to award only 6 percent interest from 1982 or to award some form of interest starting at a later date or only for portions of the period 1982 to present. While the State was not as diligent before 1982 as it should have been, the defendants undertook no known efforts to rectify what the Court considers a clear mistake they made.

In sum, the State is awarded corrected damages in the amount of $152,118 with prejudgment interest at the Federal Reserve Discount Rate plus 5 percent beginning September 14, 1982.

IT IS SO ORDERED.

---

1. The State addressed a letter to the Court regarding the matters in its decision of April 3, 1991, rather than a motion pursuant to Superior Court Civil Rule 59(a). None of the defendants objected to the form of the State's request.

2. All these arguments were presented in informal letter form and not motion form.